UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMENATA TUNKARA; and | : | |
| | : | |
| HAGIE CAMARA | : | Case No.: |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| DONALD J. TRUMP, IN HIS OFFICAL CAPACITY, PRESIDENT OF THE UNITED STATES OF AMERICA; | | |
| | | |
| KRISTI NOEM, SECRETARY | : | Hon. _____ |
| U.S. DEPARTMENT OF HOMELAND SECURITY, | : | |
| | | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, | : | |
| | | |
| KIKA SCOTT, SENIOR OFFICIAL PERFORMING THE DUTIES OF THE DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES | | COMPLAINT |
| | | |
| ANDREW DAVIS, ACTING DEPUTY DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES | : | |
| | : | |
| Defendants. | : | |

## INTRODUCTION

1. Plaintiffs Amenata Tunkara ("Petitioner" or "Mrs. Tunkara) and Hagie Camara ("Beneficiary" or "Mr. Camara") bring this action to challenge Defendant United States Citizenship and Immigration Service's ("USCIS" or "Service") improper revocation of

Mrs. Tunkara's Form I-130 Petition for Alien Relative, seeking to classify her husband, Mr. Camara, as the spouse of a United States citizen pursuant to 8 U.S.C. 201(b)(2)(A)(i).

2. This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.,* the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.,* as amended, and the regulations of the USCIS, 8 C.F.R. § 1.1, *et seq.*

## JURISDICTION

3. Jurisdiction in this case is proper under 5 U.S.C. §§551 and 701, *et seq*. (Administrative Procedures Act). This Court has original jurisdiction under 28 U.S.C. §1331 (federal subject matter jurisdiction) and 28 U.S.C. § 1361 (jurisdiction over action for mandamus). The USCIS decision also violated Plaintiffs' due process rights under the Fourteenth Amendment of the U.S. Constitution.

## VENUE

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because Defendants are officers or employees of the United States or agencies thereof acting in their official capacities. Substantial part of the events or omissions giving rise to the claims occurred in this district, where Plaintiffs resided, and where Defendants have agents and routinely conduct business.

## PARTIES

5. Plaintiff Amenata Tunkara, (hereinafter "Mrs. Tunkara") a U.S. citizen, lives in Columbus, Ohio. Mrs. Tunkara is the petitioner who filed the I-130 Petition on behalf of her husband, Haige Camara "Mr. Camara."

6.  Plaintiff, Mr. Camara a native and citizen of The Gambia, lives in the United States with his wife Mrs. Tunkara. He is the Beneficiary of the I-130 Petition filed by his wife Mrs. Tunkara.

7.  Defendant United States of America is responsible for the adjudication of the immigration petitions, including I-130 petition filed by Plaintiff, Mrs. Tunkara on behalf of her husband, Mr. Camara.

8.  Defendant Kristi Noem is the Secretary of the U.S. Department of Homeland Security

9.  ("DHS"). Defendant Noem is sued in her official capacity.

10. Defendant DHS is a Department of the United States government.

11. Defendant Kika Scott is the Senior Official Performing the Duties of the Director of U.S. Citizenship and Immigration Services ("USCIS"). Defendant Scott is sued in her official capacity.

12. Defendant Andrew Davis is the Acting Director of the USCIS. Defendant Davis is sued in his official capacity.

## **LEGAL FRAMEWORK**

13. A visa petition may be denied pursuant to INA § 204(c) where there is evidence in the record to indicate that an alien previously conspired to enter into a fraudulent marriage. *Matter of Laureano*, 19 I. & N. Dec. 1 (BIA 1983). Section 204(c) of the Immigration and Nationality Act states in relevant part:

(c) Notwithstanding the provisions of subsection (b) no petition shall be approved if
(1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws or
(2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c). A marriage is fraudulent for purposes of § 1154(c) if the couple did

not "intend to establish a life together at the time they were married." *Matter of Laureano*,

19 I. & N. Dec. 1, 2-3 (BIA 1983).

14. The Code of Federal Regulations provides the following:

*Documentation.* The petitioner should submit documents which cover the period of the
prior marriage. The types of documents which may establish that the prior marriage was
not entered into for the purpose of evading the immigration laws include, but are not
  limited to:

(1) Documentation showing joint ownership of property;
(2) A lease showing joint tenancy of a common residence;
(3) Documentation showing commingling of financial resources;
(4) Birth certificate(s) of child(ren) born to the petitioner and prior spouse;
(5) Affidavits sworn to or affirmed by third parties having personal knowledge of the
bona
fides of the prior marital relationship; or
(6) Any other documentation which is relevant to establish that the prior marriage was not
entered into in order to evade the immigration laws of the United States.

8 C.F.R. § 204.2(a)(1)(i)(B).

15. The regulation corresponding to section 204(c) of the Act, at 8 C.F.R.§204.2(a)(1)(ii)
states:

"*Fraudulent marriage prohibition.* Section 204(c) of the Act prohibits the approval of a
visa petition filed on behalf of an alien who has attempted or conspired to enter into a
marriage for the purpose of evading the immigration laws. The director will deny a
petition for immigrant visa classification filed on behalf of any alien for whom there is
substantial and probative evidence of such an attempt or conspiracy, regardless of
whether that alien received a benefit through the attempt or conspiracy. Although it is
not necessary that the alien have been convicted of, or even prosecuted for, the
attempt or conspiracy, the evidence of the attempt or conspiracy must be contained in the
alien's file."

16. The degree of proof necessary to constitute "substantial and probative evidence" is more

than a preponderance of evidence, but less than clear and convincing evidence; that is, the

evidence has to be more than probably true that the marriage is fraudulent. *Matter of*

*Singh*, 27 I&N Dec. 598 (BIA 2019) The nature, quality, quantity, and credibility of the

evidence of marriage fraud contained in the record should be considered in its totality in

4

determining if it is "substantial and probative." *Id*. The application of the "substantial and probative evidence" standard requires the examination of all of the relevant evidences and a determination as to whether such evidence, when viewed in its totality, establishes, with sufficient probability, that the marriage is fraudulent. *Id*.

## **FACTUAL ALLEGATIONS**

### *Mr. Camera and Mrs. Fatoumata Kebbeh marriage and application background*

17. Mr. Camara, entered the United States on or around March 4, 2010, as an B1/B2, Visitor Visa with authorization to stay until May 3, 2011.

18. While Mr. Camara was in the United States, he met his former spouse Ms. Fatoumata Kebbeh (hereinafter "Ms. Kebbeh") and the couple married on September 26, 2012.

19. On November 13, 2012 Ms. Kebbeh filed Forms I-130, Petition for Alien Relative, and Form I-485, Application to Register Permanent Residence or Adjust Status for Mr. Camara.

20. On June 15, 2013 the forms I-130 and I-485 were approved and Mr. Camara's status was adjusted to conditional permanent resident.

21. On May 22, 2015 USCIS received a first joint form I-751 from Mr. Camara and Ms. Kebbeh seeking to revise the conditions on residence removed.

22. On January 26, 2016, Ms. Kebbeh and Mr. Camara were interviewed at the Columbus Field Office in connection with the Form I-751 filing. According to USCIS, the interviewing officer determined that the testimony given by Ms. Kebbeh and Mr. Camara was consistent with names, date of births, among other things. However, USCIS

concluded that there were inconsistent on some points that go "to the heart of the marriage". *See Exhibit 1* Denial Letter.

23. In summation, the "inconsistencies" during the interview process was the address they lived, limited access to calls whenever Mr. Camara was traveling, inconsistencies when Ms. Kebbeh started work each day, and how much the rent payment was, which was off by a very small amount. *Id*.

24. Further, there was a child born during the marriage which no birth certificate was given. Later, Ms. Kebbeh produced one indicating the child was boring October 2, 2013, during the marriage. However, for the acknowledgement for paternity as Musa Camara was listed and signed as the father of the minor child. *Id*.

25. The Denial Letter certainly puts much weight of their decision to issue the Denial Letter due to the fact that there was a child born during the marriage by Musa Camara and possible relationship or continued communication.

26. The Denial Letter also identified Mr. Camara's production of documents did not show that there we comingling of funds, but does not put as much weight in their Denial as compared to a child being born during but not as of issue of the marriage.

27. On February 18, 2016, USCIS issued a Notice of Intent to Terminate (NOIT); Mr. Camara responded to the NOIT on March 16, 2016 with a letter, Appliance Warehouse Account, Best Buy account information, an AEP Bill, and CITI bank statement.

28. All the documents produced throughout the entire process was "given little evidentiary weight" by USCIS. *Id*.

29. USCIS noted that there were many inconsistencies that remained unaddressed but the Denial Letter kept referring to Musa Kamara and the minor child born during but not of

issue of the marriage and deemed the marriage was to "circumvent . . . . the laws of the United States."

30. On March 25, 2016 Mr. Camara received a decision from USCIS that his form I-751 under Section 216 of INA filed jointly with Ms. Kebbeh was denied based on the marriage not being in "Good Faith" and his conditional resident status was revoked.

31. Even after this denial, the couple had a child which he claimed the natural father of on November 8, 2016 as indicated in the child registry and the produced birth certificate.

32. On September 21, 2016 USCIS received a second joint form I-751 from Mr. Camara and Ms. Kebbeh seeking to revise the conditions on residence removed.

33. On March 23, 2017 the USCIS received DNA results for the minor child born on November 8, 2016 which revealed Mr. Camara was not the biological father.

34. On April 8, 2017 the second form I-751 was denied.

35. On July 31, 2017 the couple's divorce was finalized. *See Exhibit 2* Final Decree of Divorce.

36. On or about December 19, 2019 USCIS received a third form I-751 from Mr. Camara seeking to revise the conditions on residence removed claiming that the marriage to Ms. Kebbeh was entered into good faith but then terminated through divorce.

37. On January 13, 2020 USCIS issued a NOIT stating Mr. Camara did not overcome the evidence.

38. On February 5, 2020, USCIS received Mr. Camara's response to the NOIT.

39. On February 10, 2020, USCIS denied Mr. Camara's third Form I-751 based yet again on the children Ms. Kebbeh had outside of the marriage. They also stated that "that fact alone (having children outside the marriage but during) raises serious concerns regarding the

nature of their relationship." As well as their conceived intent to conceal the children born not of issue of the marriage.

40. During all these filings, interviews, and evidence requests, Mr. Camara produced a plethora of information, evidence, and documents showing he did enter the marriage in good faith and not for purposes of immigration on his part. He seemingly was denied each time due to the children born during the marriage as not of issue of the marriage. Ms. Kebbeh was found not to be credible along with Mr. Camara due to inconsistent statements among other things, but mostly the denials were regarding the children born during the marriage were not his.

41. USCIS states that although Ms. Kebbeh and Mr. Camara provided reasons for why they testified that the minor children were their biological children, they are not credible. The credibility part can be applied to Ms. Kebbeh, as she has shown throughout the whole marriage that she cannot be trusted and lied multiple times to Mr. Camara. However, Mr. Camara has only been able to answer what he believes is the truth.

42. Mr. Camara believed that his then wife was only having sexual relations with him when the children were born. Other than a paternity test establishing that he was not the father, there was no way for beneficiary to know he was not the father. Obtaining a paternity test from his wife prior to submitting the birth certificate and giving testimony to USCIS would have been unreasonable. It has been established that this marriage was real and would have continued other than Ms. Kebbeh's infidelity and lies regarding the children born during the marriage.

43. The record shows that Ms. Kebbeh was the one continuously concealing truth and lying regarding paternity of the children. The records show Mr. Camara was trying to be as

truthful as much as he was able to. Unfortunately, as a man, there was no way to physically know if the children were biologically his. Ms. Kebbeh was sleeping around with other men and Mr. Camara and that is why she did not know the baby was not Mr. Camara's until a paternity test was done. The concealment can be distinguished from Ms. Kebbeh and Mr. Camara. Ms. Kebbeh knew that there was a possibility the baby was not Mr. Camara's and she concealed that information. Mr. Camara had no way of knowing that the baby could not be biologically his until a paternity test was done. Therefore, beneficiary should not be included with Ms. Kebbeh's concealment just because he was married to her and had no way of knowing certain things.

44. Mr. Camara is a credible person. The record, other than minor inconsistencies which have been explained, shows beneficiary is an honest person. He has no criminal record throughout his whole time in the USA. He has regularly maintained employment, maintained for his family and even children that were not biologically his, has obtained letters from his community which attest to his honesty and good character. His good moral character should be considered when determining credibility. Mr. Camara is now married to a U.S. citizen and has 4 U.S. citizen children. He is the sole provider for the family and is a good father to them. He has always been willing to provide information as requested and tried to answer what USCIS asks of him. Mr. Camara is a religious person who is known well throughout the community. The abovementioned along with the supporting evidence show that Mr. Camara is credible and should be considered credible regarding his prior marriage.

*Mrs. Tunkara's I-130 Petition on Behalf of Mr. Camara*

45. On May 18, 2018, Plaintiff, Mrs. Tunkara and the Mr. Camara married in Columbus, Ohio. *See Exhibit 3 Mariage Certificate*

46. On January 8, 2019, Mrs. Tunkara filed Form I-130, Petition for Alien Relative, Application to Register Permanent Residence or Adjust Status. USC IS received the second Form 1-130 filed on behalf of Mr. Camara.

47. On November 9, 2019, Ms. Tunkara and the beneficiary appeared for an interview with an Immigration Services Officer in connection with your Form 1-130 Application to Register Permanent Residence or Adjust Status. At the interview, Mrs. Tunkara and the beneficiary provided testimony under oath.

48. On February 20, 2020 USCIS approved the I-130 application and deemed it a bone fide marriage without the purposes of committing immigration fraud.

49. On August 26, 2022 USCIS, under an independent investigation and review, over two years after granting the I-130 sent Mrs. Tunkara a NOIR, and subsequently revoked the I-130 status arbitrarily and capriciously.

50. The reason for the revocation of the granted I-130 was due to Mr. Camara's previous marriage to Ms. Kebbeh as not a bone fide marriage (again majorly based on the two children born during the marriage but were deemed not his children.).

51. USCIS concluded that "based on review of the entire record" Mr. Camara failed to establish that his prior marriage to Ms. Kebbeh was bona fide and not entered into in order to circumvent immigration laws so that Mr. Camara could obtain permanent resident status.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

52. It is generally recognized prudential requirement of administrative law that administrative remedies should be exhausted before an appeal is filed in federal court. However, "the INA does not require aliens to appeal denials of spousal immigration petitions to the BIA before seeking relief in federal court." *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006). *See also* 8 C.F.R. § 103.3(a)(ii) (providing that a party "may" appeal to the BIA.) Thus, Plaintiffs' filing before this court, without first raising an appeal before the BIA, is proper.

## FIRST CLAIM FOR RELIEF

### Violation of APA for Agency Action that is Arbitrary, Capricious, and Abuse of Discretion, or Otherwise Not in Accordance with Law, 5 U.S.C. §§702, 706(2)(A),

53. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

54. The purpose of the APA is to prevent abuse of discretion by federal agencies by granting the federal judiciary authority to review the actions of such agencies.

55. One mechanism the APA uses to prevent abuse of discretion is to place time constraints upon agencies so that agencies do not use prolonged delays for the sole purposes of harassment and intimidation, or as a method to disguise a refusal to act. For this reason, APA requires administrative agencies to conclude matters presented to them "within a reasonable time." APA §555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter present to it")

56. This Court also may hold unlawful and set aside agency action that, inter alia, is found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §706(2)(A); or "without observance of procedure required by law," 5 U.S.C.

§706(2)(D). "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §551(13).

### USCIS UNREASONABLY DELAYED THE ADJUDICATION OF MS. TUNKARA'S FORM I-130, PETITION FOR ALIEN RELATIVE

57.  USCIS took and over two years to issue a NOIR to Mrs. Tunkara's I-130 petition for her husband Mr. Camara after an "independent review".

58.  USCIS's unreasonable delay in adjudicating and arbitrarily reviewing Plaintiff's approved I-130, that it disadvantaged Plaintiffs from presenting evidence that could have been attainable.

### USCIS'S FAILED TO PROPERLY CONSIDER MATERIAL EVIDENCE CONTAINED IN THE RECORD OF PROCEEDINGS

59.  An agency decision is arbitrary and capricious if the agency fails to examine relevant record evidence or articulate a satisfactory explanation for the decision. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42-43 (1983). The arbitrary and capricious standard requires that the court determine not merely whether the agency failed to consider relevant evidence, but whether it failed to consider relevant evidence that was actually before it. *Id. at* 42-43.

60.  Contrary to USCIS's decision, which the service claims is "based on review of the *entire record,*" the 2022 NOID and the revocation of the Plaintiff's I-130 revocation failed to acknowledge the full record of evidence that was submitted in support of the said petition they simply looked at Mr. Camara's previous petitions and record.

61.  More specifically, in the revocation of Mrs. Tunkara's I-130 petition, only summarized some, but not all of the evidence that Mrs. Tunkara presented.

62. Thus, USCIS' failure to properly consider material evidence in the record was arbitrary and capricious.

**USCIS REVOCATION OF MRS. TUNKARA'S I-130 PETITION WAS BASED ON INCORRECT ANALYSIS OF THE FACTS**

63. Failure to consider this material evidence led to erroneous conclusions made by USCIS. First, USCIS incorrectly concluded that there was no credible evidence presented that Mr. Camara's first marriage to Ms. Kebbeh and they were engaged in a bone fide marriage as evidenced by the information and interviews submitted in the previous submissions. USCIS continuously concluded "the evidence you submitted are not supported by any objective evidence. Therefore, they are not probative, and will be assigned only nominal evidentiary weight." USCIS did not evaluate the record as a whole, and gave no recognition to the statements that were part of the record outside of mostly weighing in on Ms. Kebbeh's infidelity.

**USCIS' REVOCATION OF MRS. TUNKARA'S I-130 PETITION WAS IMPROPER BECAUSE THE FILE DOES NOT CONTAIN SUBSTANTIAL AND PROBATIVE EVIDENCE**

64. In order for a visa petition to be barred by INA 204(c), there must be "substantial and probative evidence" of such an attempt or conspiracy and the derogatory evidence must be contained in the alien's file. *See* 8 CFR §103.2(b)(16)(i), 204.2(a)(1)(ii); *Matter of Tawfik*, 20 I&N Dec. 166, 167 (BIA 1990).

65. The degree of proof necessary to constitute "substantial and probative evidence" is more than a preponderance of evidence, but less than clear and convincing evidence; that is, the evidence has to be more than probably true that the marriage is fraudulent. *Matter of Singh*, 27 I&N Dec. 598 (BIA 2019). The substantial and probative evidence standard "requires the examination of all the relevant evidence and a determination as to whether such evidence,

when viewed in its totality, establishes, with sufficient probability, that the marriage is fraudulent." *Singh,* 27 I. & N. at 607 (internal citations omitted). Both direct as well as circumstantial evidence may be considered in determining whether Section 204(c) of the Act applies to a petition. *Id.* at 608.

66. A preponderance of evidence in the record and demonstrates that Mr. Camara and Mrs. Kebbeh held themselves out publicly as a couple, and intended to establish a life in the U.S. together at the time of their marriage in 2012. The couple established that the marriage was bona fide at its inception. *Matter of Jara-Riero and Jara-Espinol*, 24 I&N Dec 267 (BIA 2007); 8 CFR 1245.10(a)(3)(2007). The record clearly establishes Mr. Camara and Fatoumata's "••intent to establish a life together at the time of the marriage." *Matter of Soriano*, 19 I&N Dec. 764, 7650766 (BIA 1998).

67. The record contains a common indices of genuine marriage such as no disparity of language, family/friends were aware of the marriage, no major difference in educational or economic background, evidence of long-term cohabitation, evidence of ' commingling of financial responsibilities regarding Mr. Camara and Ms. Kebbeh's bone fide marriage.

68. The conduct of the couple before and after the marriage is relevant to their intent at the time of the marriage. *Id*. Interestingly, the intent to establish a life together does not always require that the couple actually be living together at the time they apply for the immigration benefit. *See Matter of Peterson*, 12 l&N Dec. 663 (BIA 1968). The petitioner must establish that the marriage was **valid at its inception**. *Matter of Boromand*, 17 l&N Dec. 450 (BIA 1980).

69. The multiple affidavits by Mr. Camara, the statements by others, as well as a plethora of other evidence in the record and included with this response, are "credible and worth of

considerable weight because they [were] detailed, internally consistent and plausible; they included explanations of how the affiants acquired knowledge of the facts set forth; and were corroborated by historical evidence." *Matter of Patel*, 19 l&N Dec. 774, 786 (BIA 1998).

70. The preponderance of the evidence, which is substantial and probative, clearly demonstrates that Ms. Kebbeh and Mr. Camara entered into their marriage with good faith intent to establish a life together. Mr. Camara, specifically intended for the marriage to Ms. Kebbeh to be real. The fact that Ms. Kebbeh lied to beneficiary and had sexual relations with other men while they were together does not mean that the intent of beneficiary was for the marriage to fail or that he entered into it for immigration purposes. Beneficiary trusted his wife and was deceived by her, he should not be punished for her infidelity and dishonesty.

71. Rather contrary, the complete record of evidence establishes that Ms. Kebbeh and Mr. Camara's marriage was bona fide and not for immigration benefits.  In determining whether a petitioner entered into a fraudulent marriage, [t]he central question is whether the bride and groom intended to establish a life together at the time they were married." *Matter of Laureno,* 19 I.&N. Dec.1, 2-3  (1983) Relevant evidence that establishes intent includes: "proof that the Beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences." *Id.*

72. In the case at hand, the record of evidence that the Mr. Camara and his former spouse, Ms. Kebbeh intended to establish a life together **at the time they were married**, includes

insurance policies, proof of joint residence, income tax forms, bank accounts, and most importantly, countless affidavits from friends, neighbors, and coworkers; and testimony from both Mr. Camara and Ms. Kebbeh.

73. USCIS rationale for finding that Mr. Camara's prior marriage to Ms. Kebbeh falls within INA 204(c), rests entirely on Mrs. Tunkara. Defendants' revocation of Mrs. Tunkara's I-130 petition did not depend on "substantial and probative evidence" because there is no affirmative, direct, competent evidence that Mr. Camara's marriage to Ms. Kebbeh was more probably than not fraudulent at its inception, an evidentiary showing required by statute and regulations.

74. USCIS decision fails to meet the substantial and probative evidence standard, and is therefore arbitrary and capricious inasmuch as it departs from agency precedent.

### USCIS' DECISION REVOKING MRS. TUNKARA'S I-130 PETITION FAILED TO REACH AN INDEPENDENT CONCLUSION BASED ON THE EVIDENCE

75. The decision in revoking Ms. Tunkara's I-130 petition failed to reach an independent conclusion based on the evidence and violates *Matter of Tawfik*, 20 I & N Dec. 166 (BIA 1990), which holds that "the district director should not give conclusive effect to determination made in prior proceedings, rather, should reach an independent conclusion on the evidence of record."

76. The fact that USCIS in Ms. Tunkara's case also failed to acknowledge and evaluate the evidence in the NOID response, suggests that the record was not thoroughly and independently assessed. Rather, USCIS relied on the summary of the determination made in prior proceedings regarding Mr. Camara and Ms. Kebbeh's petitions.

77. Also, USCIS did not consider all the evidence in Mr. Camara's petitions with Ms. Kebbeh, but concentrated heavily on the children being born outside but during the

marriage with his previous petitions, not whether the intent to marry at the time of the marriage.

**SECOND CLAIM FOR RELIEF**

**Violation of Due Process Clause of the Fifth Amendment of the U.S. Constitution**

78. Plaintiffs reallege and incorporate reference all preceding paragraphs as if fully set forth herein.

79. Due process protects a noncitizen's liberty interest in the adjudication of applications for relief and benefits made available under the immigration laws. *See Arevalo v. Ashcroft*, 344 F/3d 1, 15 (1st Cir. 2003) (recognizing protected interests in the "right to seek relief" even when there is no "right to the relief itself")

*THE REVOCATION OF MRS. TUNKARA'S I-130 PETITION ON BEHALF OF HER IMMEDIATE RELATIVE SPOUSE IMPLICATES HER LIBERTY INTEREST IN MARRIAGE AND FAMILY LIFE*

80. The U.S. Constitution's protection of marriage and family life encompasses a U.S. Citizen's choice to build his marital home in the United States. *More v. City of E. Cleveland*, 431 U.S. 494 (1977); *see* also *Griswold v. Connecticut*, 38 U.S. 479, 502 (1965) (White, J., concurring) (describing the right to marry and "establish a home" as one of the "basic civil rights of man").

81. A U.S. Citizen's liberty interest in marriage and family life is no less fundamental when it involves immigrant families. *Fiallo v. Bell*, 430 U.S. 787, 794(1977); *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978). Congress has made family unity a central goal of our immigration laws. A U.S. Citizen may petition the government for a visa for her non-citizen spouse, and Congress has accorded such petitioner a "most favored" position under

17

our immigration laws. *Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191, 2197 (2014) (noting that "immediate relatives" of U.S. Citizens are "most favored" under U.S. Immigration laws).

82. USCIS's revocation of Mrs. Tunkara's I-130 petition significantly burdens her fundamental liberty interest in marriage and family life, by making it virtually impossible for her spouse to legally reside in the United States with her.

83. Any foreign national who attempts or conspires to enter into a marriage for the purpose of evading U.S. immigration laws is ineligible for an immigrant visa (8 U.S.C. § 1154(c)(2)); thus, he can never become a citizen of, or even reside permanently in, the United States. *See Ghaly v. I.N.S.*, 48 F.3d 1426, 1436 (7th Cir. 39 1995) (Posner, J., concurring) ("This [Section 204(c)] is a harsh law, and one would expect the government in enforcing it to make at least modest efforts to guard against mistakes.").

84. The USCIS, by delegation of the Attorney General and the DHS Secretary, has exclusive authority over the adjudication of I-130 petitions. This means that, even in the context of removal proceedings, an immigration judge would be unable to adjudicate, or review the denial of, an I-130 petition. The only recourse for overturning an unlawful Section 204(c) finding, other than through the BIA, lies in the federal courts.

## **CONCLUSION**

85. Evidence on the record and the supporting documents in this response show that Mr. Camera and Mrs. Tunkara are in a bona fide relationship. The instant 1~130 Petition should not be revoked based on Mr. Camara's prior history with Ms. Kebbeh.. Mr. Camara and Ms. Kebbeh entered into a good faith marriage. They resided together, held themselves out as a couple and shared financial assets. It is true they did not have a perfect

relationship, but the intent was for the marriage to be a real one. It is also true that Ms. Kebbeh's admitted infidelity led to the end of the marriage and that her sole concealment of real paternity raised some concerns regarding the prior marriage.

86. However, up until the point of infidelity and concealment, the marriage was real. Any concealment was primarily attributed to Ms. Kebbeh and her own actions. Mr. Camara could only answer what he was asked and what he reasonably believed to be the truth from what his then wife led him to believe. Any other inconsistency regarding Mr. Camara's testimony has been explained. Mr. Camara is also willing to testify again should users wish to clarify any :outstanding issues. users had the opportunity to question beneficiary regarding the prior marriage at his last interview and chose not to. Instead, the instant I-130 Petition was approved and a subsequent investigation was done that based the revocation of the instant I-130 Petition.

87. Beneficiary is a person of good moral character and should be deemed credible.

88. Beneficiary is not asking for the prior marriage case to be approved, only for USCIS to find that beneficiary did not enter into that marriage for the purposes of evading immigration laws.

89. Mr. Camara did all he could to keep that marriage alive, but Ms. Kebbeh's infidelity and actions led to the divorce. Plaintiffs should not be punished for the sole actions of Mr. Camara's former spouse. Mr. Camara has addressed in his response why his marriage to Ms. Kebbeh was not entered into for the purpose of evading immigration laws.

90. Further, INA 204 (c) should not be applied in this case as there is no substantial and probative evidence on the record of marriage fraud from Mr. Camara.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully request that this Court issue judgment in its favor and against Defendants and issue the following relief:

A. Declare that USCIS' revocation of Plaintiff's Form I-130, Immigrant Petition for an Alien Relative is unlawful, order USCIS to re-adjudicate and reinstate and reapprove the I-130 Petition in a proper and lawful manner;

B. Declare that USCIS conclusion that INA § 204(c) precluded approval or revocation of Plaintiffs' I-130 Petition violated the statute, governing regulations, and Board of Immigration Appeals precedent;

C. Declare that there is not substantial and probative evidence supporting a revocation of the I-130 Petition pursuant to INA § 204(c);

D. Award attorneys' fees and costs; and

E. Grant such other relief as this Court finds appropriate.

Respectfully Submitted,

/s/Ghassan M. Shihab___
Ghassan (Gus) M. Shihab
Ohio Bar Number: 0061098
Eric Dennis Ricker
Ohio Bar Number 0097733
Law Firm of Shihab & Associates
5925 Wilcox Pl. Ste A
Dublin, Ohio 43016
Tel. 614-255-4872
Fax. 614-255-4870
Email: gus@shihab.law
        ericker@shihab.law

Counsel for Plaintiffs

**INDEX OF EXHIBITS**

Exhibit 1: Copy of 2016 Denial of Petitioner's Form I-130, and I-485 Petition for Alien Relative.

Exhibit 2: Copy of Mr. Camara and Ms. Kebbeh's Final Decree of Divorce.
Exhibit 3: Copy of Mr. Camara and Mrs. Tunkara's Marriage License

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 13, 2025, the foregoing *Complaint* was served on the following through the CM/ECF system:

**DONALD J. TRUMP, IN HIS OFFICAL
CAPACITY, PRESIDENT OF THE UNITED
STATES OF AMERICA;**

**KRISTI NOEM, SECRETARY
U.S. DEPARTMENT OF HOMELAND
SECURITY,**

**U.S. DEPARTMENT
OF HOMELAND SECURITY,**

**KIKA SCOTT, SENIOR OFFICIAL
PERFORMING THE DUTIES OF THE
DIRECTOR, U.S. CITIZENSHIP AND
IMMIGRATION SERVICES**

**ANDREW DAVIS, ACTING DEPUTY
DIRECTOR, U.S. CITIZENSHIP AND
IMMIGRATION SERVICES**

Respectfully Submitted,

/s/Ghassan M. Shihab____
Ghassan (Gus) M. Shihab
Ohio Bar Number: 0061098
Eric Dennis Ricker
Ohio Bar Number 0097733
Law Firm of Shihab & Associates
5925 Wilcox Pl. Ste A
Dublin, Ohio 43016
Tel. 614-255-4872
Fax. 614-255-4870
Email: gus@shihab.law
          ericker@shihab.law

Counsel for Plaintiffs